Although plaintiff's present condition arose as a result of a series of repeated traumas to a specific area of his body directly related to his employment, his condition is more appropriately characterized as an occupational disease because it arose over a period of ten months.
An injury by accident, as that term is ordinarily understood, is distinguished from an occupational disease in that the former rises from a definite event, the time and place of which can be fixed, while the latter develops gradually over a long period of time. Henry v. Lawrence Leather Co., 234 N.C. 126,66 S.E.2d 693 (1951).
In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), plaintiff must establish three elements:
 (1) The disease was due to causes and conditions characteristic of and peculiar to the employment, trade, or occupation;
 (2) The disease is not an ordinary disease of life to which the public is equally exposed outside of the employment and that the employment placed the worker at a greater risk than the general public of contracting the disease; and
 (3) There must be proof of causation, i.e. proof of a causal connection between the disease and the employment.
To satisfy the first and second elements it is not necessary that the disease originate exclusively from or be unique to the particular trade or occupation in question. All ordinary diseases of life are not excluded from the statute's coverage, only such ordinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded. Booker v. Duke Medical Center,297 N.C. at 472-75, 256 S.E.2d 189, at 198-200 (1979). Thus, the first two elements are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally. Id. "The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation." Id. at 475, 256 S.E.2d at 200.Rutledge v. Tultex Corp., 308 N.C. 85, at 93-94,301 S.E.2d 359 (1983).
A disease may be an occupational disease provided the occupation in question exposed the worker to a greater risk of contracting the disease than members of the public generally, and provided the occupational exposure significantly contributed to, or was a significant causal factor in, the development of the disease. This is so even if other non-work-related factors also make significant contributions, or were significant causal factors. Id, at 101.
The record indicates that after driving a service truck in which plaintiff bounced on a hard seat for 25 to 40 hours a week for ten months, the plaintiff developed a pilonidal cyst or "jeep drivers' disease" or "truck drivers' disease" consisting of a swollen sinus at the posterior midline base of his coccyx in the soft tissue. Plaintiff testified that he "was sore" and "started noting a lump forming at the end of my tailbone [about two weeks] before the date of June 4th [1994]." He further testified that ". . . it kept growing and growing, and until one day it got real bad."
Dr. Gary T. Robinson, a general surgeon who treated the plaintiff, testified that in his opinion there was an increased risk with this problem or for getting this problem if you drive for a living. He further opined that this is not a congenital problem, but this is a problem that occurs from trauma to the area and constant rubbing of the buttocks together, resulting in hair follicles becoming plugged when the trauma pushes the hair down into the subcutaneous tissue. He also testified that some 77,000 service men were seen with this condition during a six-year period of time between 1939 and 1945, during the second world war, as a result of driving jeeps which had poor suspension systems. The disease takes its principal name from the observation that those jeep drivers, who averaged 55 days of hospitalization, had a markedly higher incidence of this disease, and it was therefore presumed at that point that this occurrence was due to some kind of trauma.
Defendant argues that developing a pilonidal cyst or "jeep drivers' disease" is an "ordinary disease of life," and is therefore noncompensable. They cite in particular Dr. John I. Hollenbeck's testimony that the plaintiff's job did not cause or significantly contribute to the development of his pilonidal cyst, that it did not place him at a greater risk than the general public not so employed, that a pilonidal cyst or "jeep drivers' disease" is not a disease which is limited to persons who professionally drive trucks, and that Dr. Hollenbeck believes the disease is caused by congenital problems, unrelated to a person's employment.
Clearly, developing a pilonidal cyst or "jeep drivers' disease" could be an "ordinary disease of life" in the sense that members of the general public may contract the disease. Our statute, however, does not preclude coverage for all ordinary diseases of life, but instead, only those "to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13) (Emphasis added). The testimony of Dr. Robinson, the plaintiff's treating surgeon, cited earlier, supports the deputy commissioner's conclusion that the public is exposed to the risk of developing a pilonidal cyst or "jeep drivers' disease" to a far lesser extent than was the plaintiff.
These findings are sufficient to sustain the deputy commissioner's conclusion that plaintiff's disease was caused by his employment.
Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS with minor modifications the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between the plaintiff and the defendant-employer.
3. Defendant is self-insured.
4. The average weekly wage may be determined from an Industrial Commission Form 22 Wage Chart and also information relating to plaintiff's employment records.
5. Plaintiff's medical records were stipulated into evidence. These medical records consist of thirty-two pages of documentation.
6. Defendant's responses to the plaintiff's first set of interrogatories, defendant's answers to plaintiff's second set of interrogatories and request for production of documents, plaintiff's response to defendant's interrogatories and plaintiff's response to defendant's second set of interrogatories are all stipulated into evidence.
7. The issue before this Commission is whether the plaintiff contracted an occupational disease while in the scope of his employment with the defendant-employer.
 *********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was hired on November 1, 1993, as a heating and air conditioning service and installation technician with the defendant-employer. Plaintiff's responsibilities included driving the defendant-employer's truck to various service sites. Plaintiff would thereafter spend large amounts of time on the job driving this truck between supply houses and the service sites.
2. After working for the defendant-employer for about ten months, the plaintiff developed a pilonidal cyst at the top of his coccyx consisting of a swollen infected sinus at the posterior midline base of his coccyx in the soft tissue which was red and which gradually caused plaintiff's complaints of pain to escalate from "soreness" to hurt "real bad".
3. Plaintiff sought treatment June 4, 1994, and was treated by two physicians at General Medical Associates in Statesville, Dr. Mel and Dr. Pavloc. He was referred to Dr. Gary T. Robinson, a general surgeon on November 29, 1994, and was diagnosed as having a pilonidal cyst, also known as "jeep drivers' disease" or "truck drivers' disease". Initially, Dr. Robinson drained the cyst and placed the plaintiff on antibiotics. A conservative means of treatment was pursued.
4. The initial treatment plaintiff received temporarily alleviated the swelling of the cyst.
5. Plaintiff reported his condition to defendant-employer in a timely manner and reported his physician's recommendation that he should not continue to drive pending surgery.
6. Plaintiff requested defendant-employer to place him in non-driving positions pending surgery. The defendant-employer talked with plaintiff about another possible position, but no job was offered.
7. Because of continued pain, the plaintiff was forced to leave his employment with defendant-employer January 1, 1995.
8. After leaving his job as a truck driver with the defendant-employer, the cyst improved.
9. Plaintiff found employment January 17, 1995, with a different employer, Duncan Heating and Plumbing, with whom he worked as a subcontractor until May 26, 1995, earning $2,895.40.
10. Plaintiff's cyst again began swelling after he resumed his duties as a service and installation technician with Duncan Heating and Plumbing.
11. Plaintiff's cyst was again cut and drained by Dr. Robinson March 17, 1995.
12. Subsequently, the plaintiff left his employment permanently May 10, 1995, upon the order of Dr. Robinson because the pain and swelling associated with the cyst prohibited him from being able to perform his duties.
13. In early 1996 plaintiff worked on occasion with Brown and Walker where he earned $1,475.00.
14. Plaintiff underwent surgery to remove the cyst April 10, 1996. He continues to experience pain from that operation that makes riding extremely difficult for him.
15. Plaintiff has attempted to find other employment; however, all of the positions that he has been able to find available require that he drive from one site to another.
16. Prior to his employment with the defendant-employer, plaintiff had never experienced any problems with a cyst or swelling in the coccyx area.
17. Dr. Gary T. Robinson, plaintiff's treating physician, opined that plaintiff's cyst was caused by trauma to the area and the constant rubbing of the buttocks, trapping debris in the hair follicles causing infection. Dr. Robinson opined that driving a truck places one at an increased risk of developing this condition.
18. Dr. John I. Hollenbeck, a general surgeon, was hired by defendant to render an opinion in this case based upon a review of the medical reports. He did not examine plaintiff. Dr. Hollenbeck would not render an opinion on the cause of plaintiff's pilonidal cyst, but did state that there are three possible etiologies: (1) congenital, (2) in-grown hair, and (3) trauma. He favored the congenital theory. In his opinion, trauma from driving did not cause the cyst.
19. Greater weight is accorded to the opinion of Dr. Gary T. Robinson, plaintiff's treating physician who had an opportunity to examine and treat plaintiff over a period of time and who was willing to render an opinion on the cause of plaintiff's condition, rather than what was not the cause.
20. Due to the substantial amount of driving specifically related to his employment as a heating and air conditioning technician, plaintiff was at a higher risk of contracting this disease as compared to members of the general public not so employed.
21. Plaintiff's job with defendant-employer required that he drive a service truck for 25 to 40 hours each week. During the ten months of his employment, plaintiff was exposed to repeated bouncing up and down on the hard seat of the truck. The repeated trauma to his coccyx area while driving defendant-employer's truck either caused or significantly contributed to plaintiff's development of a pilonidal cyst or "jeep drivers' disease" or "truck drivers' disease", a compensable occupational disease.
22. Based on the greater weight of the evidence, plaintiff's continuing problem with his cyst after January 1, 1995, was a direct and natural consequence of his initial development of a pilonidal cyst while employed with the employer-defendant and was not the result of a new occurrence or an aggravation of his former problem as a result of later employment with other employers. According to Dr. Robinson, once the inflammatory process starts, it can flare up again without any new trauma to the area. He further opined that doing a similar activity could cause a flare up or a new occurrence; or any piece of foreign material that remains trapped or lodged below the skin's surface can smolder for a while and flare up again on its own.
23. As a result of contracting an occupational disease while working with the defendant-employer, the plaintiff became incapable of earning the same wages or greater wages in his employment with defendant-employer or in any other employment from May 10, 1995 through the date of hearing and continuing. Plaintiff's incapacity to earn the same or greater wages was caused by his job-related occupational disease.
24. Plaintiff's average weekly wage was $440.00 per week, rendering a temporary total disability benefit rate of $293.33 per week.
25. Defendant is entitled to a credit for wages earned by plaintiff for the brief periods he worked after January 1, 1995.
 *********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. For a disability to be compensable under North Carolina's Workers' Compensation Act, it must be either the result of an accident arising out of and in the course of employment or an "occupational disease." Hansel v. Sherman Textiles,304 N.C. 44, at 51, 283 S.E.2d 101-106 (1981),
2. Plaintiff has proven by the greater weight of the evidence that he developed an occupational disease manifested as a pilonidal cyst or "jeep drivers' disease" or "truck drivers' disease" which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which was not an ordinary disease of life to which the general public was equally exposed. N.C. Gen. Stat. § 97-53(13);Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
3. If a disease or condition which is non-occupational in its incipience is in fact aggravated or accelerated by causes and conditions peculiar to the claimant's employment, disability resulting therefrom is compensable. Hansel v. ShermanTextiles, 304 N.C. 44, 283 S.E.2d 101 (1981).
4. Plaintiff's continuing problem with his cyst after January 1, 1995, was a direct and natural consequence of his initial development of a pilonidal cyst while employed with the employer-defendant and was not the result of a new occurrence or an aggravation of his former problem as a result of later employment with other employers.
5. As a result of his development of a compensable occupational disease, plaintiff is entitled to temporary total disability compensation at the rate of $293.33 per week from May 10, 1995, through the date of hearing and continuing until the plaintiff returns to work earning the same or greater wages or until further order of the Industrial Commission, except that defendant-employer is entitled to credit for the $1,475.00 which plaintiff earned from Brown and Walker during 1996 and for wages earned in the amount of $2,895.46 after he attempted to return to work with a different employer in early 1995. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to receive all medical treatment related to his occupational disease which would tend to effectuate a cure or provide relief, or lessen his disability N.C. Gen. Stat. § 97-25.
 *********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to the attorney's fee provided below, for plaintiff's compensable occupational disease, defendant shall pay the plaintiff temporary total disability compensation at the rate of $293.33 per week from May 10, 1995, through the date of hearing and continuing until the plaintiff returns to work earning the same or greater wages or until further order of the Industrial Commission, except that defendant-employer is entitled to credit for the $1,475.00 which plaintiff earned from Brown and Walker during 1995 and for the $2,895.46 plaintiff earned in 1996. The accrued amounts shall be paid in a lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred in the future by the plaintiff as a result of his occupational disease for so long as such examinations, evaluations and treatments are reasonably required to effect a cure, give relief or lessen his disability when the bills for same have been submitted and approved through procedures adopted by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraph one of this Award shall be deducted from that sum paid directly to plaintiff's counsel; and, thereafter, plaintiff's counsel shall directly receive 25% of each week's disability compensation due the plaintiff.
4. Defendant shall pay the costs, including an expert witness fee of $185.00 for Dr. Gary T. Robinson.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ ________________ LAURA K. MAVRETIC COMMISSIONER