CHARLES HENRY, EMPLOYEE, v. A. C. LAWRENCE LEATHER COMPANY, EMPLOYER, AND SECURITY MUTUAL CASUALTY COMPANY, CARRIER.

(Filed 19 September, 1951.)

1. **Master and Servant § 40f—**

   The provisions of the Workmen's Compensation Act providing for compensation only for injuries resulting by accident arising out of and in the course of the employment has been extended to provide compensation for those occupational diseases which are enumerated in the Act. G.S. 97-2 (f), G.S. 97-52, G.S. 97-53.

2. **Statutes § 5a—**

   Ordinarily technical terms of a statute must be given their technical connotation in its interpretation.

3. **Master and Servant § 40f—**

   An occupational disease is a disease caused by a series of events of a similar or like nature occurring regularly or at frequent intervals over an extended period of time in the discharge of the duties of the employment.

4. **Same—**

   Tenosynovitis attributable to repeated strain or stress on the extensor tendons of claimant's arms incident to the performance of the duties of his employment *is held* "caused by trauma in employment" and is an occupational disease compensable under the provisions of G.S. 97-53 (21), since "trauma" in its technical sense is not limited to injuries resulting from external force or violence.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Rousseau, J.,* May Term, 1951, HAYWOOD. Affirmed.

Claim for compensation under the Workmen's Compensation Act.

Claimant was an employee of the defendant Leather Company. It was his duty to dip crops. He would take them off a wagon, dip them in a vat, and then load them on another wagon. As he was about to complete the loading of a wagon, it was necessary for him to throw the crops up over his head or shoulder. The constant, repeated strain or stress on the extensor tendons of his arms, resulting from this method of handling the crops, produced a condition known as tenosynovitis, commonly called tennis elbow. By reason of this condition he has suffered a 20% permanent partial disability or loss of use of his right elbow and a 40% permanent partial disability or loss of use of his left elbow.

The medical testimony offered tends to show that claimant's condition is occupational and was produced by the repeated motions in dipping and loading the crops which required a pronation of the hands, causing strain on the extensor tendons of the arms; that a blow or contusion could cause a localized tenosynovitis of short duration but it would be different from the condition found to exist in claimant's arm.

In discharging his duties, claimant received no blow or series of blows against his elbows or arms and suffered no external injury by force or violence of any type or form other than the repeated strain on the extensor tendons of his arms caused by the manner in which he was required to perform the labor for which he was employed.

The Industrial Commission found the facts and upon the facts found concluded that the claimant is suffering from tenosynovitis caused by trauma in his employment which produced his disability, and made an award. Defendants appealed to the Superior Court. The court below affirmed and defendants appealed.

*Frank D. Ferguson, Jr., for plaintiff appellee.*
*Morgan & Ward and Glenn W. Brown for defendant appellants.*

BARNHILL, J. The underlying purpose of our Workmen's Compensation Act, G.S. Chap. 97, is to provide compensation for workmen who suffer disability by accident arising out of and in the course of their employment. The Act as originally adopted defined "injury" for which compensation is to be allowed to "mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident." G.S. 97-2 (f). However, it soon became apparent that

any scheme or plan for the payment of compensation to disabled employees should include those diseases or abnormal conditions of human beings the causative origin of which is occupational in nature. To meet this need the Legislature adopted Chap. 123, P.L. 1935, now G.S. 97-52 and 53. In this amendatory Act it designated the diseases and conditions which "shall be deemed to be occupational diseases within the meaning of this article," G.S. 97-53, and broadened or extended the meaning of the word "accident" as used in the original Act so as to include a disablement or death resulting from an occupational disease described in G.S. 97-53, G.S. 97-52. It provides that "the word 'accident,' as used in the Workmen's Compensation Act, shall not be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously or at frequent intervals in the course of such employment, over extended periods of time . . . and disease attributable to such causes shall be compensable only if culminating in an occupational disease mentioned in and compensable under this article." That is to say, when stated in a positive rather than a negative form, disablement or death resulting from any such "series of events" in employment shall be treated as the happening of an injury by accident compensable under the Act when and only when such series of events culminates in one of the occupational diseases mentioned in G.S. 97-53. An occupational disease attributable to such causes must be treated as an injury by accident arising out of and in the course of employment, and compensation must be awarded for any resulting disablement.

Among those diseases or conditions which are classified as occupational and compensable is "tenosynovitis, caused by trauma in employment." G.S. 97-53 (21).

The claimant is now suffering from tenosynovitis in both elbows. This condition is attributable to "a series of events in employment, of a similar or like nature, occurring regularly, continuously or at frequent intervals in the course of employment." The "series of events" was the frequent pronation of the hands in dipping and loading the crops which produced a repeated strain or stress upon the extensor tendons of plaintiff's arms, causing inflammation of the tendons and their protective sheaths. The Commission so found and the findings are fully supported by the evidence.

As we read the record, the defendants do not seriously challenge these facts. They do, however, stressfully contend that the facts so found and the evidence on which they are based do not warrant or support the finding or conclusion that claimant's condition, technically known as tenosynovitis, was caused by trauma in his employment. This is the battleground of the controversy.

The question thus posed for decision is to be resolved by a determination of the meaning of three terms: "'tenosynovitis," "trauma," and "occupational disease," as those terms are used in the statute.

The Legislature, in adopting Chap. 123, P.L. 1935, had under consideration diseases and morbid conditions of the human body. In designating those diseases and conditions which are to be deemed occupational in origin and compensable under the Act, it, for the most part, used technical terms. Anthrax, bursitis, asbestosis, silicosis, nystagmus, synovitis, and tenosynovitis are technical words. In construing the Act we must accord them their technical connotation.

"So far as the interpretation of a statute is concerned, courts have said that there are four kinds of terms: common, technical, legal, and trade or commercial." Southerland, Stat. Const., 3rd Ed., Vol. 2, 424. And "in the absence of a legislative intent to the contrary, technical terms or terms of art when used in a statute are presumed to have been used with their technical meaning." *Id.,* 437; *Hawley v. Diller,* 178 U.S. 476, 44 L. Ed. 1157; *S. v. Domanski,* 190 A. 854 (R.I.); *Bank v. Eelman,* 183 A. 677 (N.J.); *Ry. Co. v. State,* 143 S.W. 913 (Ark.).

Synovitis (G.S. 97-53 (20)) is the inflammation of a synovial membrane and tenosynovitis or tendosynovitis is the inflammation of a synovial membrane which forms the protective sheath that encloses the tendon. It is sometimes used to denote the inflammation of both the sheath and the tendon. Webster, New Int. Dic., 2d Ed.; Dorland, Am. Illus. Med. Dic., 21st Ed.; Reed & Emerson, The Relation between Injury and Disease, p. 500; Maloy, Med. Dic. for Lawyers, 2d Ed.; Gelber, Medico-Legal Text on Traumatic Injuries, p. 117.

The causative origin of tenosynovitis is either infection (usually either gonorrheal or tubercular) or trauma, and traumatic synovitis is caused by (1) contusion of a joint, (2) spraining or twisting of a joint, (3) overuse of a joint, or (4) *stretching of tendons and tendon sheaths by repeated* overflexion or overextension. Gelber, Medico-Legal Text on Traumatic Injuries, 117. "Noninfectious tendosynovitis follows blows which contuse tendons themselves and severe strains which overstretch them." One type of noninfectious tenosynovitis is "that type which follows long-continued, rapidly repeated, movements which create almost continuous overactivity of certain tendons." Reed & Emerson, Relation between Injury and Disease, 502.

"Chronic strains may occur when a worker performs operations with parts of his body that require a repetition of movements over long hours . . . Rapid and often repeated motion of tendons through their sheaths may cause an irritation resulting in a synovitis or tenosynovitis." Reed & Harcourt, The Essentials of Occupational Diseases, p. 115.

The average layman familiar with the term thinks of trauma as external force or violence which causes an injury, such as a cut, abrasion or contusion, to the outer surface of the body, or the condition produced by such force. However, it has a more comprehensive meaning in the field of medicine.

Trauma is an injury or wound or the resulting condition. Webster, New Int. Dic.; Dorland, Am. Illus. Med. Dic. "Trauma can be defined as injury to the body inflicted by some form of outside force. It is divided into four categories: 1. Physical trauma, caused by physical violence; 2. Thermal trauma, caused by heat or cold; 3. Electrical trauma, caused by electrical energy; 4. Chemical trauma, caused by poisons." Gonzales, Vance, Helpern, Legal Medicine and Toxicology, 88. Physical trauma may be either percutaneous or subcutaneous, and subcutaneous injuries are injuries which damage the body but are not associated necessarily with penetrating wounds.

Traumatic tenosynovitis is usually a result of strenuous, oft-repeated, or unaccustomed use of the wrist. Shands, Handbook of Orthopedic Surgery, p. 499. "The synovial membrane which covers the tendon and lines the sheath may be injured either by the trauma of over-use or by a force applied from without." Vol. V, Practitioner's Library of Medicine and Surgery, p. 905.

The expert testimony is to like effect. The expert in orthopedic surgery stated that "wound or injury is trauma, but not all trauma comes under that classification. Wound or injury as the meaning of the word trauma in the medical sense is not all-inclusive . . . Repeatedly putting the elbow through motions, to call that trauma would not be a misuse of the word medically . . . Anything that pushes something down is considered a force." And Dr. Lancaster testified: "I would say that tenosynovitis could not result from repeated external trauma. Tenosynovitis by its very definition results from the repeated pulling and stretching of a particular tendon . . . Tenosynovitis is an inflammation of the sheath in which the tendon moves, this inflammation can come from constant use in strained positions . . . I don't think this condition could result without the intervention of some unusual strain or use of that particular tendon . . . The trauma would be the continuous stretching and pulling of that particular ligament in his occupation."

The Legislature, in listing those diseases which are to be deemed occupational in character, was fully aware of the meaning of the term "occupational disease." Indeed, it in effect, defined the term in G.S. 97-52 as a diseased condition caused by a series of events, of a similar or like nature, occurring regularly or at frequent intervals over an extended period of time, in employment. The term has likewise been defined as a diseased condition arising gradually from the character of the employee's

work. These are the accepted definitions of the term. *Cannella v. Gulf Refining Co. of La.*, 154 So. 406; *Barron v. Texas Employers' Ins. Assoc.*, 36 S.W. 2d 464. See also Words & Phrases, "Occupational Diseases."

An injury by accident, as that term is ordinarily understood, "is distinguished from an occupational disease in that the former rises from a definite event, the time and place of which can be fixed, while the latter develops gradually over a long period of time." 71 C.J. 601 (see cases in note).

A single blow on the arm might bruise the extensor tendons to such an extent as to cause temporary tenosynovitis. The resulting condition would be properly termed an injury by accident caused by trauma. But it would not constitute an occupational disease, for, as stated, an occupational disease is a diseased or morbid condition which develops gradually, and is produced by a series of events in employment occurring over a period of time. It is the cumulative effect of the series of events that causes the disease.

So then, it is apparent that the clause "caused by trauma in employment" was used by the Legislature to modify the word "tenosynovitis" so as to include the occupational and exclude the infectious type—to include the traumatic and exclude the idiopathic. In adopting Chap. 123, P.L. 1935, it was not making provision for compensation for "injuries by accident" as that term is ordinarily understood. Provision for that type of injury had already been made in the original Act. It was considering those diseases the causative origin of which is occupational and designating those which are to be deemed within the new and extended definition of "injury by accident" it was then providing. In using the modifying phrase, "caused by trauma in employment" it necessarily meant a series of events in employment occurring regularly, or at frequent intervals, over an extended period of time, and culminating in the condition technically known as tenosynovitis. This is the nature of the disease or condition from which the plaintiff is suffering. The award of compensation for the resulting disability is required by the statute.

The judgment of the court below is

Affirmed.

VALENTINE, J., took no part in the consideration or decision of this case.