The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. The carrier on the risk at all relevant times was The Travelers Company.
4. The parties stipulated that the plaintiff's injury by accident to her back of February 6, 1993 is admittedly compensable.
5. The parties stipulated that the defendants paid the plaintiff-employee temporary total disability benefits from February 17, 1993 until March 16, 1993 pursuant to Industrial Commission Form 21 which was approved on March 28, 1993.
6. The parties stipulated that at the time of the plaintiff's admittedly compensable injury by accident, her average weekly wage was $365.00
7. The parties stipulated to a packet of the plaintiff's medical records from the Neurology Clinic at Pillai Neuro-Psychiatric Center, Gaston Memorial Hospital, Carolinas Medical Center, First Health, Charlotte Orthopaedic Specialists, Bowman Gray School of Medicine Department of Neurology, Gaston Orthopaedic Clinic, P.A., and Southern Orthopaedics.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff-employee was 32 years old.
2. Plaintiff-employee began her employment with defendant-employer as a press-operator on April 25, 1990. Plaintiff-employee's job duties included loading metal and rubber parts into a machine. After the machine completed a cycle, plaintiff-employee was responsible for taking the parts out of the machine and placing them on a sheet for storage.
3. On February 6, 1993, plaintiff-employee suffered an admittedly compensable injury by accident to her back when she slipped and fell in oil.
4. Plaintiff-employee initially presented to First Health on February 8, 1993 and reported injuries to her right thigh and right chest. On February 10, 1993, plaintiff-employee returned to First Health complaining of a catch in her back on the right side.
5. Plaintiff-employee was referred by the First Health physician to Dr. Whitesides who saw plaintiff-employee initially on February 19, 1993. Dr. Whitesides performed a neurological examination which was normal and Dr. Whitesides diagnosed plaintiff-employee with a soft tissue injury.
6. On February 25, 1993, plaintiff-employee presented to Dr. William Griffin, an orthopaedic surgeon. Dr. Griffin diagnosed a muscle strain in plaintiff-employee's low back. Dr. Griffin also noted that X-rays of the plaintiff-employee's lumbar spine and thoracic spine were normal. Dr. Griffin saw plaintiff-employee again on March 8, 1993, at which time he opined that plaintiff-employee's strain had resolved and that there was no physical explanation for plaintiff-employee's continued complaints of pain.
7. Dr. Griffin released plaintiff-employee to return to unrestricted work as of March 8, 1993. Plaintiff-employee returned to work on March 9, 1993, and was provided with light duty work. Defendant-employer subsequently requested that plaintiff-employee return to her regular job. At the hearing, plaintiff-employee testified that when she attempted to perform her regular duties she became paralyzed and had to be taken to the hospital by ambulance. There is no medical evidence in the record to support a physical explanation for plaintiff-employee's contention that she became paralyzed.
8. In March of 1993, plaintiff-employee subsequently came under the care of Dr. Thomas Florack. On March 22, 1993, Dr. Florack's records indicate that he reviewed plaintiff-employee's previous X-rays which were normal, that his neurological examination of plaintiff-employee was normal, and that plaintiff-employee's symptoms were out of proportion to her findings. Dr. Florack released the plaintiff-employee to return to light duty work with a lifting restriction of ten pounds. Plaintiff-employee did return to light duty work and continued to perform her light duty job checking parts until she was terminated on or about April 12, 1993. Plaintiff-employee's termination from defendant-employer's employment was unrelated to her admittedly compensable back injury of February 6, 1993.
9. Plaintiff-employee continued treatment with Dr. Florack after her termination. Dr. Florack's notes reflect that there was no physical cause for plaintiff-employee's complaints of pain.
10. Plaintiff-employee presented to Dr. Joshua Miller, a specialist in pain management and anesthesiology, in late 1993. Dr. Miller treated plaintiff-employee with steroid injections which provided no relief; however, Dr. Miller could not rule out a psychiatric component to plaintiff-employee's complaints of pain.
11. At the hearing before the Deputy Commissioner, plaintiff-employee testified that her back pain was unbearable and as a result, she attempted to commit suicide in August of 1993. After plaintiff-employee's unsuccessful attempt to commit suicide, she was admitted to Gaston Memorial Hospital and thereafter treated at Gaston Mental Health. Plaintiff-employee reported that her depression was due to difficulties at work and a history of abuse. Dr. Laura Lowenbergh, a psychiatrist, performed a psychiatric interview with plaintiff-employee on August 24, 1993 and diagnosed plaintiff-employee as suffering from severe depression with suicide attempt, anxiety disorder NOS and back injury with chronic lower back pain.
12. Dr. Lowenbergh opined that she had no opinion regarding any causal relationship between plaintiff-employee's February 6, 1993 admittedly compensable injury by accident and plaintiff-employee's depression and anxiety.
13. After receiving cortisone shots in November of 1993, plaintiff-employee began having shakes or tremors. These tremors continued on the date of the hearing before the Deputy Commissioner. However, the physician at the Carolinas Medical Center who treated plaintiff-employee on October 11, 1994 determined that plaintiff-employee's tremors were hysterical or represented malingering due to plaintiff-employee's prior psychiatric history, their atypical nature and sudden onset. Furthermore, Dr. Ashok Pillai, a neurologist whose evaluation was specifically directed toward determining the cause of plaintiff-employee's tremors, and Dr. Francis Walker, Associate Professor at Bowman-Gray, both opined that there was no known cause for plaintiff-employee's tremors, they were of unexplained etiology and there was no indication of a neurologic disorder. Dr. Walker stated there was a significant psychological component to plaintiff-employee's condition.
14. On May 11, 1995, plaintiff-employee went to Gaston Mental Health and counseled with Lori Traywick, a mental health clinician with a Masters degree in counseling psychology. Plaintiff-employee reported her problems as flashbacks from sexual abuse by her stepfather when she was eight years old, some back pain with shaking, loss of job, low income and feelings of victimization and responsibility. Ms. Traywick diagnosed plaintiff-employee with depression and post-traumatic stress disorder.
15. Ms. Traywick opined that the first diagnostic criterion for post-traumatic stress disorder is a person exposed to a traumatic event in which both of the following are present: the person experienced, witnessed or was confronted with an event or events that involved actual or threatened death or serious injury or a threat to the physical integrity of self or others and the person's response involved intense fear, helplessness or horror. Ms. Traywick further reported that the plaintiff-employee was sexually abused at age eight and her resulting fear of that episode is the event which resulted in the diagnosis of post-traumatic stress disorder. However, neither Ms. Traywick nor Dr. Lowenbergh could relate plaintiff-employee's depression or other psychological or psychiatric complaints to plaintiff-employee's admittedly compensable injury by accident of February 6, 1993.
16. There is no medical evidence in the record to establish that plaintiff-employee's tremors are causally related to her admittedly compensable injury by accident on February 6, 1993, or that there is a neurologic basis for these tremors.
17. There is no medical evidence in the record to establish that plaintiff-employee's psychological or psychiatric condition is causally related to her admittedly compensable injury by accident of February 6, 1993.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
The plaintiff has the burden of proof in each and every element of compensability. Henry v. A. C. Lawrence Leather Co.,234 N.C. 126, 66 S.E.2d 693 (1951). In the instant case, the medical evidence fails to establish that plaintiff-employee is physically disabled from continuing in gainful employment as a result of her February 6, 1993 admittedly compensable injury by accident. Moreover, the medical evidence fails to establish that plaintiff-employee's tremors, psychological or psychiatric conditions are causally related to her admittedly compensable injury by accident of February 6, 1993. Since plaintiff-employee failed to carry her burden of proof in this case, she is not entitled to benefits under the North Carolina Workers' Compensation Act.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The plaintiff's claim is and under the law must be DENIED.
2. Each side shall pay its own costs, except that the defendants shall pay an expert witness fee to Dr. Laura Lowenbergh in the amount of $90.00.
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER