***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Denial of Benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The date of the alleged injury is October 1, 1999. However, defendants deny plaintiff suffered an injury by accident and contend that plaintiff was doing his normal job in a normal manner at the time of the injury.
4. Plaintiff's average weekly wage was $610.34, resulting in a compensation rate of $406.91 per week.
5. Plaintiff was totally disabled from October 11, 1999, through February 20, 2000.
6. Plaintiff returned to work in a limited capacity on February 21, 2000, with resulting reduced wages. Plaintiff continues to be employed by defendant-employer in a limited capacity at reduced wages.
7. Plaintiff is claiming temporary total disability compensation from October 11, 1999, through February 20, 2000 (19 weeks) pursuant to N.C. Gen. Stat. § 97-29, temporary partial disability compensation from February 21, 2000, through the present and ongoing pursuant to N.C. Gen. Stat. § 97-30, or in the alternative, permanent partial disability compensation under N.C. Gen. Stat. § 97-31, and plaintiff is claiming medical benefits under N.C. Gen. Stat. § 97-25 and § 97-25.1.
Furthermore, plaintiff reserves the right to assert a claim for permanent and total disability benefits under N.C. Gen. Stat. § 97-29
if his employment with defendant-employer should terminate.
8. The following documents were received into evidence as stipulated exhibits: Stipulated Exhibits 2, 3, 4, 5, and 6; I.C. Forms 18, 19, 33, 33R, and 61; Plaintiff's Medical Records, Payroll Records, Recorded Statement, and Discovery Responses.
9. Plaintiff's issues for hearing were stated as follows:
 1. Did plaintiff suffer an injury by accident on or about October 1, 1999?
 2. Did plaintiff suffer an occupational disease that caused or contributed to plaintiff's disability and need for medical treatment on October 11, 1999, and thereafter?
 3. Was plaintiff's disability due to a disease that was aggravated or accelerated by causes and conditions characteristic of and/or peculiar to plaintiff's employment with defendant-employer?
 4. What is the extent of plaintiff's disability as a result of said injury by accident and/or occupational disease?
 5. What disability and medical benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
 ***********
Based up the evidence of record the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was fifty-six years old at the time of the hearing before the Deputy Commissioner and completed the ninth grade. He has no other formal education.
2. Plaintiff's duties as a sheet metal mechanic for defendant-employer included the removal and installation of heating and air conditioning systems and ductwork. Most of the work was on older houses. Plaintiff's job required that he frequently work in confined spaces in attics and basements. Plaintiff also was required to frequently crawl on his hands, elbows and knees under houses in dirty conditions. Plaintiff often worked on his hands and knees all day. The ability to crawl on his hands and knees was an essential function in the performance of plaintiff's job duties.
3. Plaintiff had preexisting medical conditions including total blindness in his right eye, hearing loss in his left ear and rheumatoid arthritis that was diagnosed in 1996 and had primarily affected his hands and shoulders. Prior to October 1, 1999, none of these preexisting conditions had caused plaintiff to miss time from work.
4. On October 1, 1999, plaintiff was working on a job for defendant-employer at an older house with a co-worker, Lynn Gray. The job required the removal of the old furnace and cooling coil from under the house near the chimney where the flue connected. There were pieces of brick on the ground from the construction of the chimney. Plaintiff crawled over the broken pieces of brick to remove the old furnace and cooling coil. The broken pieces of brick tore through plaintiff's shirt and scraped or skinned his right elbow.
5. Over the next several days, the area around plaintiff's right elbow became red, hot and swollen with red streaks that extended to his right wrist. Infections subsequently traveled through plaintiff's bloodstream and infected his right knee. On October 11, 1999, plaintiff's right knee was red, hot, swollen, and he had great difficulty walking due to the pain.
6. Plaintiff was evaluated by Dr. Truslow who suspected an infection and immediately admitted plaintiff to Moses Cone Memorial Hospital. The fluid Dr. Truslow removed from plaintiff's right knee was consistent with an infectious process and was not related to his rheumatoid arthritis.
7. In the hospital, cultures were obtained from plaintiff's right knee. He was started on intravenous antibiotics and consultations were obtained with infectious disease and orthopedic specialists. Dr. Whitfield, an orthopedic specialist, examined plaintiff on October 12, 1999 and stated that plaintiff "has evidence of olecranon bursitis and prepatella bursitis secondary to work which could be the initial site of infection." On October 13, 1999 Dr. Dick Lavender, an associate of Dr. Whitfield, performed an arthroscopic procedure to debride the infected tissue and flush the infected joint. Dr. Lavender stated that plaintiff's right knee showed significant signs of infection.
8. Dr. John Campbell, an infectious disease specialist, saw plaintiff on October 14, 2000. Dr. Campbell reviewed all available records in plaintiff's chart and interviewed plaintiff about his past medical history as well as his current problems. Dr. Campbell concluded that plaintiff had septic arthritis, and the olecranon or prepatella bursitis may have been the source.
9. Dr. Campbell observed a resolving wound on plaintiff's right elbow from the tip of the elbow and a little bit down the forearm. Dr. Campbell stated that it appeared to be consistent with a scrape that could be caused by crawling and also with a resulting infection.
10. Dr. Campbell stated that a staph aureous infection is a bacterial infection that enters the body through breaks in the skin and can invade tissue at the site of entry or travel through the blood stream to other sites. If the infection gets into a joint it can be very destructive. The infection will erode the cartilage through the inflammation that it triggers and rapidly damage the joint surface. The infection can inflame and destroy all of the tissues around the joint including cartilage, synovium, ligaments, and bone.
11. Dr. Lavender testified that the infection and the October 13, 1999 surgery required to treat the infection caused or contributed to weakness in the tissues of plaintiff's right knee, which caused or contributed to degeneration of and damage to the cartilage in the knee including a tear of the meniscus. Dr. Lavender performed a second surgery on plaintiff's right knee on January 26, 2000 and found synovitis or thickening of the lining of the joint, a tear of the medial meniscus and degeneration of the superior surface of the meniscus.
12. At an appointment on February 17, 2000, Dr. Lavender released plaintiff to return to work with restrictions of no squatting or crawling and only working half days. Plaintiff returned to work on February 21, 2000 in a limited capacity with resulting loss of wages.
13. Plaintiff reached maximum medical improvement on July 18, 2000 and retains a 20% permanent partial disability rating to his right leg as a result of his compensable injuries.
14. Plaintiff's treating doctors concluded and the Full Commission finds that the staph infection was the result of the scrape to plaintiff's right elbow while working for defendant-employer that allowed the infection to enter his body and spread through his bloodstream to his right knee. Plaintiff's pre-existing prepatellar bursitis contributed to the onset and spread of infection and increased the damage to the knee caused by the staph infection.
15. As the result of the trauma experienced by plaintiff crawling on his hands and knees, plaintiff contracted the occupational disease of bursitis due to intermittent pressure in the employment.
16. Plaintiff suffered an injury by accident on October 1, 1999 when he scraped his elbow on broken pieces of brick creating a portal for the staph infection which eventually infected plaintiff's knee. Although plaintiff frequently had scratches and scrapes while crawling under houses on the job, there is no evidence of record that any other scratches or scrapes became infected on previous occasions. Plaintiff's scraped elbow injury on October 1, 1999 followed by the invasion of the scratch by staph bacteria and resulting infections constituted an untoward or fortuitous event which was an interruption of plaintiff's work routine.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As defined by the statute, an "injury" shall mean an injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident. N.C. Gen. Stat. § 97-2(6). An "accident" is an unlooked for and untoward event which is not expected or designed by the injured employee. Love v. Town of Lumberton, 215 N.C. 28,1 S.E.2d 121 (1939). The words "undesigned" or "unforeseen" refer to the result produced, and not to its cause. Id. Cuts, abrasions or contusions to the outer surface of the body are recognized examples of injury or the results of trauma from an external force or violence.Henry v. A.C. Lawrence Leather Co., 234 N.C. 126, 130, 66 S.E.2d 693, 696
(1951). Plaintiff suffered an injury by accident when he tore his shirt and scraped his elbow on broken pieces of brick. The accident constituted an interruption in plaintiff's normal work routine in that he experienced an open wound which created a portal for the staph infection. See, Calderwood v. Charlotte-Mecklenburg Hospital Authority,135 N.C. App. 112, 519 S.E.2d 61 (1999). This was an unlooked for mishap or untoward event which constitutes an accident within the meaning of the statute. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's staph infection, which he contracted as a result of the scrape or cut to his elbow, is a natural and unavoidable consequence of his injury by accident. An infection resulting from a work related injury is compensable. Kearns v. Biltwell Chair Furniture Co.,222 N.C. 438, 23 S.E.2d 310 (1942).
3. Plaintiff contracted an occupational disease, bursitis, due to intermittent pressure in the employment. N.C. Gen. Stat. § 97-53(17).
4. As a direct and proximate result of his compensable injuries and occupational disease, plaintiff was totally disabled and incapable of earning wages which he was receiving at the time of his compensable injury at the same or any other employment from October 1, 1999 until he returned to work earning reduced wages on February 21, 2000. Plaintiff is entitled to temporary total disability compensation at the rate of $406.91 per week for this period of time. N.C. Gen. Stat. § 97-29.
5. As a direct and proximate result of his compensable injuries, plaintiff incurred a partial wage loss when he returned to work at reduced wages and is therefore entitled to temporary partial disability compensation from February 21, 2000 until he reached maximum medical improvement on July 18, 2000 at the rate of two-thirds of the difference between his average weekly wage at the time of the accident and his average weekly wages he was able to earn during that period of time. N.C. Gen. Stat. § 97-30.
6. As a direct and proximate result of his compensable injuries, plaintiff sustained a 20% permanent partial disability to his right leg for which he is entitled to receive compensation for 40 weeks. N.C. Gen. Stat. § 97-31(15).
7. Plaintiff is entitled to elect the more munificent remedy after July 18, 2000, the date he reached maximum medical improvement, to either receive temporary partial disability compensation under N.C. Gen. Stat. § 97-30 for 300 weeks from the date of injury or payment for his permanent partial disability rating pursuant to N.C. Gen. Stat. §97-31(5). McLean v. Eaton Corp., 125 N.C. App. 391, 481 S.E.2d 289
(1997).
8. To the extent the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injuries and occupational disease. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his compensable injury and occupational disease, defendants shall pay to plaintiff temporary total disability compensation at a rate of $406.91 per week for the period from October 1, 1999 through February 20, 2000. This amount has accrued and shall be paid in a lump sum subject to an attorney's fee approved below.
2. For his compensable injury and occupational disease, defendants shall pay to plaintiff temporary partial disability compensation from February 21, 2000 through July 18, 2000 at the rate of two-thirds of the difference between his average weekly wage at the time of the accident and his average weekly wages he was able to earn during that period of time. This amount has accrued and shall be paid in a lump sum subject to an attorney's fee approved below.
3. Subject to plaintiff's election of benefits, for his compensable injury and occupational disease, defendants shall pay to plaintiff either permanent partial disability compensation at the rate of $406.91 per week for 40 weeks for his twenty percent permanent partial disability rating to his right leg or partial disability payments for 300 weeks from the date of the injury at the rate of two-thirds of the difference between his pre-injury average weekly wages and his earnings thereafter. The portion of this compensation that has accrued shall be paid in a lump sum subject to an attorney's fee approved below.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under this Award is approved for plaintiff's counsel and shall be deducted from that sum and paid directly to plaintiff's counsel.
5. Defendants shall pay all past and future medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries and occupational disease.
6. Defendants shall pay the costs due to the Commission.
This the ___ day of April 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/mhb