***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. Defendant is self-insured and the third party administrator in this claim is Key Risk Management Services.
5. Plaintiff alleges to have sustained carpal tunnel, elbow neuropathy and trigger finger problems in the right hand, wrist and arm due to repetitive and cumulative trauma from typing at work.
6. An employment relationship existed between the employee and employer on September 19, 2008.
7. Defendant contends that plaintiff was not injured as the result of an accident or an occupational disease.
8. Plaintiff's average weekly wage is $676.65, yielding a compensation rate of $451.10. Plaintiff was out of work from September 22, 2008 to October 13, 2008, to undergo a right carpal tunnel and trigger finger release, which was performed on September 22, 2008.
9. Mediation was held and the parties reached an impasse on March 31, 2009.
10. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-Trial Agreement; and *Page 3 
 • Exhibit 2: Compilation of documents including Industrial Commission Forms, Medical Records, Discovery Responses, Plaintiff's Recorded Statement, FMLA Forms, Plaintiff's Personnel File and Job Description (consecutively paginated from 1-336).
11. The record shall include the stipulated records submitted in plaintiff's motion filed on or about August 3, 2010.
12. The issues for determination by the Full Commission are whether plaintiff sustained a compensable injury by accident or compensable occupational disease to her right wrist, hand, middle finger and elbow arising out of and in the course of her employment with defendant-employer on or about September 19, 2008; and, if so, what are the compensable consequences; and also whether plaintiff is entitled to reinstatement of her sick leave pursuant toEstes v. N.C. State University,89 N.C. App. 55, 58, 61, 365 S.E.2d 160 (1988).
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 46 years old. Plaintiff completed the eleventh grade in high school and obtained a high school equivalency certificate by passing the General Educational Development Test (GED). Plaintiff later obtained an associates degree in Business Administration in 2002.
2. Plaintiff's work history consists of working as a receptionist in a VCR shop, working as a mail carrier for the United States Post Office for two years, and doing domestic work for various employers. *Page 4 
3. On October 5, 1995, plaintiff began working for defendant-employer as a housekeeper and remained in that position for two years. Thereafter, plaintiff moved to a position as a department secretary with defendant-employer, where her job duties required data entry, typing, filing, answering the telephone, researching time records, ordering supplies and other general office duties.
4. On September 8, 2000, plaintiff transferred to the position of administrative support technician, which had similar duties to the department secretary job. As of the date of the hearing before the Deputy Commissioner, plaintiff continued to hold this position.
5. According to plaintiff's testimony, approximately 60-75% of plaintiff's time is spent entering data into the computer. This task includes data entry for work orders, purchase orders, invoices, reports and spreadsheets. When plaintiff is not entering data during her work day, she is filing, making copies or collating notebooks. Plaintiff works from 7:00 a.m. to 4:00 p.m., with a break for lunch.
6. In 2001, plaintiff began complaining of pain, numbness and tingling along her neck and right arm. Plaintiff is right hand dominant. Plaintiff received treatments for these problems over the years from various medical providers. Plaintiff initially felt that it was the physical layout of her work station and the amount of data entry which were causing her problems.
7. Following an adjustment to her workstation, plaintiff's symptoms improved by January 2, 2002, although she still had complaints of pain extending over her right shoulder.
8. On January 28, 2003, plaintiff underwent electro-diagnostic testing, the results of which were normal, with no evidence of carpal tunnel syndrome. *Page 5 
9. On July 7, 2006, plaintiff presented to Dr. Bahner, an orthopedic surgeon with Atlantic Orthopedics, with complaints of locking, clicking and pain in her right long (trigger) finger. Plaintiff reported that her middle finger had been bothering her for over six months, and the symptoms did not seem to be improving. On physical examination, plaintiff's right long finger was actively triggering and Dr. Bahner administered an injection in this finger.
10. On January 2, 2007, plaintiff returned to Atlantic Orthopedic with reports of increased pain and catching in the right long finger. On physical examination, plaintiff again had active triggering in that finger. She was also tender at the palmar flexion crease at the base of the right long finger and had pain with hyperextension.
11. Just over a year later, on January 10, 2008, plaintiff again returned to Atlantic Orthopedic with complaints of right trigger finger problems and also complaints indicative of right carpal tunnel syndrome. Dr. Bahner administered another injection to the right middle finger.
12. During this same period of time, plaintiff received treatment for her cervical spine at Coastal Rehabilitation Medicine Associates. Plaintiff underwent another MRI of the cervical spine and additional EMG testing. The MRI revealed a central disc protrusion and osteophytes at C4-5 through C6-C7. The nerve conduction studies were normal. Plaintiff received injections to her cervical spine and made further modifications to her workstation, which provided some relief for her neck and arm symptoms.
13. On September 9, 2008, plaintiff returned to Dr. Bahner and indicated that she wanted to consider further treatment for her right long finger and her right carpal tunnel syndrome. At this visit, plaintiff's median nerve compression test was positive. Dr. Bahner *Page 6 
recommended that plaintiff wear a brace at work and take frequent breaks from repetitive activity.
14. On September 22, 2008, Dr. Bahner performed an open right carpal tunnel release and open right trigger finger release. Plaintiff was removed from work from September 22, 2008 through October 13, 2008, to recover from her surgeries.
15. On October 10, 2008, plaintiff presented to Dr. Bahner, who released plaintiff to return to light duty work as of October 13, 2008, with a limitation of five pounds of lifting and limited pushing, pulling and gripping with the right hand. Defendant filed a Form 19 Employer's Report of Employee's Injury
on October 13, 2008.
16. On November 12, 2008, defendant denied plaintiff's claim with the filing of a Form 61 Denial of Workers' Compensation Claim
on the basis that plaintiff's injury or occupational disease did not arise out of and in the course of her employment.
17. On December 10, 2008, plaintiff filed a Form 18, Notice ofAccident to Employer, listing her right wrist, hand, middle finger and elbow, as the injured areas. The Form 18 indicates that plaintiff suffered from "carpal tunnel, elbow neuropathy and trigger finger problems in the right hand due to repetitive and cumulative trauma from typing at work."
18. As a result of continued symptoms in her right long finger, Dr. Bahner ordered an MRI of plaintiff's right hand. The MRI revealed marked tenosynovitis of the third flexor tendon sheath with a large amount of fluid within the tendon sheath. On June 16, 2009, Dr. Bahner opined that plaintiff's symptoms were likely aggravated by her work activity, such as typing.
19. On August 25, 2009, plaintiff presented to Dr. Richard S. Moore, an orthopedic surgeon, with a specialization in the upper extremity. Plaintiff reported that she had done well post-operatively in regards to her carpal tunnel release but continued to have pain in and along *Page 7 
the flexor tendon sheath. Dr. Moore opined that plaintiff had persistent tenosynovitis, or persistent inflammation in the flexor tendon sheath in the left and right middle fingers.
20. Dr. Moore recommended that plaintiff try anti-inflammatory medications, topical medications, therapy and injections prior to pursuing surgery, such as a revision of her trigger finger release or a tenosynovectomy.
21. Plaintiff testified that she bowled as a hobby. This was a seasonal activity in which she engaged once per week, four times per month, from September to March. Plaintiff testified that she did not practice between games, and when she did bowl, it was for about two hours at a time, with a ball that weighed between eleven and thirteen pounds. Plaintiff also testified that bowling does not bother her hand or her long finger. Plaintiff last bowled in March 2009, and she only bowled one time that month because of personal matters. There is insufficient evidence of record to indicate that plaintiff's bowling contributed to her right trigger finger and carpal tunnel problems.
22. Dr. Bahner and Dr. Moore both testified in this matter as experts in the field of orthopedic surgery with a focus in the upper extremity.
23. Dr. Bahner opined that plaintiff had stenosing tenosynovitis isolated to her right long (trigger) finger and carpal tunnel syndrome in the right wrist. Dr. Bahner testified that trigger finger and carpal tunnel syndrome are closely related and that 50% of the people that have one condition develop the other condition since they can be similarly caused.
24. As surgery had not completely resolved plaintiff's trigger finger symptoms, Dr. Bahner opined that whatever is causing plaintiff to continue to experience inflammation of the tenosynovial is the result of some activity that plaintiff continues to perform. In other words, there is some stressor to plaintiff's right middle finger that has not resolved. *Page 8 
25. On the issue of causation, although Dr. Bahner could not say with medical certainty that plaintiff's work activities caused her trigger finger or carpal tunnel syndrome, he did opine that plaintiff's problems with her right middle finger were likely aggravated by activity at work, such as typing.
26. Dr. Bahner recommended a tenosynovectomy for plaintiff's right middle finger to help resolve her symptoms.
27. On the issue of causation, Dr. Moore testified that the work plaintiff performed, involving data entry or typing approximately 60-75% of the time since 2000 would more likely than not be the most significant contributing factor to plaintiff's development of carpal tunnel syndrome and trigger finger problems.
28. Dr. Moore opined that doing the same repetitive activity over and over causes stress on the limited arc of motion or a limited joint and is micro trauma, which leads to the development of tenosynovitis. With regard to plaintiff's specific work duties, Dr. Moore opined that the repetitive trauma of the data entry and typing that plaintiff performed caused the inflammation and micro trauma to her right long finger and more likely than not contributed to the development of trigger finger or tenosynovitis. Accordingly, the Full Commission finds plaintiff's right long finger tenosynovitis was caused by trauma in her employment.
29. On the issue of whether plaintiff was at an increased risk of developing carpal tunnel and trigger finger problems, Dr. Moore testified that the work plaintiff performed, involving data entry or typing approximately 60-75% of the time would place her at a greater risk for developing carpal tunnel and trigger finger problems as compared to members of the general public. *Page 9 
30. Dr. Moore's opinions on causation and increased risk were based on the repetitive nature of plaintiff's work and the greater weight of the evidence of record supports that plaintiff's work involved repetitive typing. Dr. Moore took into consideration that approximately 60-75% of plaintiff's time was spent entering data or typing and this fact is also supported by the greater weight of the evidence.
31. Based on the greater weight of the medical and lay evidence of record, taken in its totality, the Full Commission finds that plaintiff's employment with defendant-employer significantly contributed to her development of right carpal tunnel syndrome and right trigger finger. Further, plaintiff's employment placed her at an increased risk of developing right carpal tunnel syndrome and trigger finger as compared to members of the general public. In addition, the Full Commission finds plaintiff's right long finger tenosynovitis was caused by trauma in her employment.
32. As of the date of the hearing before the Deputy Commissioner, plaintiff continued to experience problems with her right long finger.
33. There is insufficient evidence of record to indicate whether plaintiff has reached maximum medical improvement with regard to her right tenosynovitis, or trigger finger and carpal tunnel syndrome in her right wrist.
34. The Full Commission finds that plaintiff would benefit from further medical treatment with Dr. Moore including, anti-inflammatory medications, topical medications, physical therapy, injections and a possible revision of her trigger finger release or a tenosynovectomy. *Page 10 
35. While the issue of compensability of plaintiff's right elbow condition is contained in the pre-trial agreement, there is insufficient evidence of record to address this issue at this time.
36. Plaintiff was removed from work from September 22, 2008 through October 13, 2008, to recover from her surgeries for her right tenosynovitis or trigger finger, and carpal tunnel syndrome in her right wrist and was unable to earn any wages in her employment with defendant-employer or any other employer.
37. Although not raised in the pre-trial agreement, in its brief defendant asserted that plaintiff's claim should be barred due to her failure to provide defendant with timely notice of her alleged injury or occupational diseases pursuant to N.C. Gen. Stat. § 97-22. Plaintiff was diagnosed with carpal tunnel syndrome in her right wrist and right trigger finger by Dr. Bahner on January 10, 2008. However, the evidence is unclear as to when or if a medical provider specifically related plaintiff's problems with her carpal tunnel syndrome and trigger finger to her employment. Furthermore, plaintiff had experienced cervical spine problems, which some physicians thought may have accounted for her right arm symptoms. Plaintiff completed an incident report for defendant-employer as soon as she realized her condition was serious enough to require surgery and received treatment from specialists for her conditions. The Full Commission finds that any delay by plaintiff in providing defendant with written notice of her claim is reasonably excused. Defendant presented no evidence of prejudice by any delay in reporting.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 11 
 CONCLUSIONS OF LAW
1. Compensation under the Workers' Compensation Act may be awarded for an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13) if two conditions are met: (1) the disease must be "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment"; and (2) the disease cannot be an "ordinary disease of life to which the general public is equally exposed outside of the employment." Booker v. Medical Center, 297 N.C. 458, 468;256 S.E. 2d 189, 196 (1979). The claimant bears the burden of proving the existence of an occupational disease. Gay v. J.P.Stevens Co.,79 N.C. App. 324, 331, 339 S.E. 2d 490, 494 (1986).
2. In this case, plaintiff's employment with defendant-employer caused or significantly contributed to the development of her right carpal tunnel syndrome and right trigger finger or tenosynovitis and placed her at an increased risk for developing these conditions. Plaintiff's right carpal tunnel syndrome and right trigger finger or tenosynovitis were not ordinary diseases of life to which the general public is equally exposed and, therefore, plaintiff contracted compensable occupational diseases. N.C. Gen. Stat. § 97-53(13); Booker v. Medical Center,supra.
3. Alternatively, tenosynovitis caused by trauma is an enumerated occupational disease under N.C. Gen. Stat. § 97-53 (21). Plaintiff has proven by the greater weight of the evidence that she contracted tenosynovitis as a result of her work with defendant-employer and that the repetitive trauma to her right long finger was caused by the pressure applied during repeated typing or data entry while working for defendant-employer. Henry v. Leather Co.,234 N.C. 126, 66 S.E.12d 693 (1951). *Page 12 
4. As a direct and proximate result of plaintiff's compensable occupational diseases of right carpal tunnel syndrome and right trigger finger or tenosynovitis, plaintiff was unable to earn any wages from September 22, 2008 through October 13, 2008, when she underwent and was recovering from right carpal tunnel surgery and a right trigger finger release, which were performed on September 22, 2008. Thus, plaintiff was disabled and is entitled to temporary total disability compensation at the rate of $451.10 per week from September 22, 2008 through October 13, 2008. N.C. Gen. Stat. §§ 97-29, 97-54.
5. Plaintiff is entitled to have defendant provide such medical care and treatment as is reasonably required to provide relief, effect a cure or lessen plaintiff's period of disability caused by plaintiff's compensable occupational diseases of right carpal tunnel syndrome and right trigger finger or tenosynovitis, including but not limited to, further medical treatment with Dr. Moore and a possible revision of her trigger finger release or a tenosynovectomy. N.C. Gen. Stat. §§ 97-2(19); 97-25.
6. While denying liability, an employer may pay benefits from a sickness and accident fund or private disability program it finances that provides benefits to disabled employees regardless of the cause of disability, and if the employer is finally determined to be liable for compensation, it is entitled to a credit or offset against compensation due unless the Commission determines, in the reasonable exercise of its discretion, that the credit, or some portion of it, should be denied. N.C. Gen. Stat. § 97-42;Church v. Baxter Travenol Laboratories,104 N.C. App. 411, 416-17, 409 S.E.2d 215 (1991); Estes v.N.C. State University,89 N.C. App. 55, 58, 61, 365 S.E.2d 160 (1988). In this case, as defendant did not admit liability for workers' compensation benefits, workers' compensation benefits were not due and payable under the Act *Page 13 
for that period. N.C. Gen. Stat. § 97-42; Foster v.Western-Electric Co., 320 N.C. 113, 357 S.E.2d 670 (1987);Estes v. N.C. State University,102 N.C. App. 52, 401 S.E.2d 394 (1991).
7. Defendant is entitled to a credit, as allowed by statute, for sick leave benefits paid to plaintiff from September 22, 2008 through October 13, 2008, and plaintiff is entitled to restoration of her sick leave used during her period of disability. N.C. Gen. Stat. § 97-42.
8. The time limit for filing an occupational disease claim begins when an employee sustains an occupational disease which renders her incapable of earning any wages and when the employee is informed by competent medical authority of the diagnosis and its work-related nature. Terrell v. Terminix Servs.,142 N.C. App. 305, 542 S.E.2d 332 (2001). In the present case, plaintiff was diagnosed with carpal tunnel syndrome in her right wrist and right trigger finger by Dr. Bahner on January 10, 2008, but the evidence is unclear as to when or if a medical provider specifically related plaintiff's conditions to her employment. Plaintiff was taken out of work on October 22, 2008 and filed a Form 18 on December 10, 2008. Therefore, plaintiff's claim is not time barred. Further, any delay in providing defendant with written notice of her claim is reasonably excused and there is insufficient evidence upon which to conclude that defendant was prejudiced by any delay. N.C. Gen. Stat. §§ 97-58(b), 97-22.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below and a credit to defendant for sick leave benefits provided, defendant shall pay temporary total disability compensation to plaintiff at the rate of $451.10 per week from September 22, 2008 through October 13, 2008. *Page 14 
2. Plaintiff is entitled to restoration of her sick leave benefits.
3. Defendant shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable occupational diseases of right carpal tunnel syndrome and right trigger finger or tenosynovitis for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
4. A reasonable attorney's fee in the amount of 25% of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's counsel. As this compensation has accrued, defendant shall pay 25% of the accrued compensation directly to plaintiff's counsel.
5. Defendant shall pay the costs.
This 18th day of October, 2010.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ STACI MEYER COMMISSIONER *Page 1